**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| KEVIN ALSTON, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-20-2317 |
| | * | |
| BALTIMORE GAS & ELECTRIC CO., | * | |
| *et al.,* | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Kevin Alston ("Alston") filed a Complaint in the Circuit Court for Baltimore City, Maryland against Defendants Exelon Corporation ("Exelon") and Exelon Business Services Company, LLC ("EBSC") (collectively "the Exelon Defendants"), Baltimore Gas & Electric Co. ("BGE") (with the Exelon Defendants, "the Employer Defendants"), and the International Brotherhood of Electrical Workers, Local Union 401 ("the Union"), and Patrick Gilden ("Gilden") (collectively "the Union Defendants"). ECF 3. The Employer Defendants removed the case to this Court on August 11, 2020. ECF 1. On August 28, 2020, motions to dismiss were filed by the Union Defendants, ECF 17, and the Employer Defendants, ECF 18. Those motions were not timely opposed. On September 19, 2020, Alston filed a Motion to Remand the case to state court. ECF 27. The Union Defendants and the Employer Defendants each filed oppositions, ECF 30 and 31, and Alston filed a Reply.[1] ECF 32. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018).

---

[1] The Reply that was filed, ECF 32, purports to incorporate arguments made in a second, yet-unfiled reply. Plaintiff shortly thereafter filed a letter stating that he "[did] not intend to file a substantive reply to the Defendants' Oppositions to Plaintiff's Motion to Remand." ECF 33. Irrespective of the lack of clarity resulting from the initial reply and follow up letter, the time for filing replies has now expired, and no extensions were sought.

For the reasons that follow, Alston's motion to remand will be denied, and Defendants' motions to dismiss will be granted.

## I.      FACTUAL BACKGROUND

These facts are derived from Alston's Complaint, and are taken as true for purposes of adjudicating the motions to dismiss.  Alston worked as a gas mechanic for BGE from November, 2015 through January 18, 2019.  ECF 3 ¶ 4.  BGE is a subsidiary of Exelon, and EBSC provides support services, including Human Resources ("HR") services to all Exelon subsidiaries.  *Id.* ¶¶ 6,7.  The Union represents more than 1400 of BGE's gas and electric workers.  *Id.* ¶ 8.  While attempting to come to agreement on final terms of a collective bargaining agreement, on May 24, 2018, BGE and the Union executed an Interim Complaint Procedure agreement ("ICP") to govern any disputes between BGE and its Union-represented employees.  *Id.* ¶ 25.  The ICP provided a three-step process for dispute resolution, including an initial meeting between the department manager and a Union steward, the subsequent submission of a written complaint followed by a meeting between a BGE HR Business Partner and the Union President, and then, at the final step, a meeting between Exelon's East Director of Employee and Labor Relations and a designated Union representative.  *Id.*

In March, 2018, Alston's immediate supervisor instructed him to report to a BGE substation for a "fact-finding meeting."  *Id.* ¶ 28.  Alston sought advice from his Union shop steward, Defendant Gilden, who advised him to ask whether the meeting could result in discipline and, if so, to request the presence of a Union representative.  *Id.* ¶ 29.  When Alston arrived at the meeting, his supervisor, Gas Supervisor Gabe Yori, was there with an HR representative.  *Id.* ¶ 30. Alston asked whether he could be subject to discipline as a result of the discussion, and the HR representative nodded.  *Id.*  Alston then asked to have a Union representative present.  *Id.*  After

private consultation, the HR representative and Yori stated that Alston would not be disciplined, but merely counseled on how to improve.  *Id.*

Alston reported the occurrence to his Union representatives, who investigated and were told that the proposed counseling had been withdrawn. *Id.* ¶ 31.  In the ensuing months, Alston received entirely favorable feedback regarding his work, including his feedback from Yori.  *Id.* ¶ 32.  In September, 2018, Alston was transferred to the supervision of Emergency Response Supervisor Frank Peusch.  *Id.* ¶ 33.  A coworker warned Alston that he should "keep his nose clean" because management "had it out for him."  *Id.* ¶ 34.  On November 18, 2018, Peusch instructed Alston to attend another "fact-finding" meeting. *Id.* ¶ 35.  This time, Alston requested and was permitted to have a Union representative with him.  *Id.*  Both Yori and Peusch were present at the meeting, during which Alston was accused of approximately ten rule violations.  *Id.* Most were minor, but Yori accused Alston of two more significant offenses: stealing time on one occasion and lying about being at a particular job site on a second occasion.  *Id.*  Alston responded that he had followed Dispatch's directions on the first occasion and had been present at the job site on the second occasion.  *Id.*  Yori admitted that, prior to the meeting, he had not consulted Dispatch about the first incident.  *Id.*

After the meeting, the Union representative, President and Business Manager Eric Gomez, told Alston that the only significant concerns were the two incidents Yori had raised.  *Id.* ¶ 26, 36. Alston encouraged Gomez to speak to the Dispatcher regarding the first incident.  *Id.* ¶ 36.

Alston returned to work for two months without hearing further from management.  *Id.* ¶ 37.  During that period, Gomez and the Union did not contact the Dispatcher to corroborate Alston's story. *Id.* ¶ 38.  On January 16, 2019, Peusch instructed Alston to attend another meeting. *Id.* ¶ 39.  When Alston arrived, Peusch was present with the Gas Emergency Response Manager

Frank Tiburzi, Jr., an HR representative, and a security guard, without a Union representative. *Id.* Tiburzi told Alston that his employment was terminated, provided him a trash bag for his personal belongings, and hired a Lyft to transport him home. *Id.*

Alston immediately contacted Gomez and told him that he wanted to file a complaint under the ICP for his unfair and discriminatory termination. *Id.* ¶ 40. Gomez advised that he would initiate the complaint process and would call Alston back to explain how the process worked. *Id.* The next day, Alston texted Gomez to ask for an update and for the explanation about the complaint process. *Id.* ¶ 41. Gomez stated that he could not predict whether Alston would get his job back, but that the Union would file a grievance and a request for information. *Id.*

On March 6, 2019, Gomez informed Alston that BGE had responded to the information request and had agreed to hear Alston's case. *Id.* ¶ 43. Gomez advised that BGE had "some pretty compelling evidence" and he was not sure they could "beat it," but expressed an intent to obtain statements from Alston and his co-workers about the incidents. *Id.* Gomez stated that he was assigning the case to Gilden, who would review the case with BGE, and then it would "most likely advance to Mr. Gomez's level." *Id.* After that exchange, though, Alston did not hear further from Gomez. *Id.* ¶ 44. Gilden became Alston's primary Union contact. *Id.*

Gilden explained the three-step process under the ICP for resolution of employee complaints. *Id.* ¶ 45. On April 2, 2019, Gilden told Alston that the Dispatcher had corroborated Alston's story about the first incident. *Id.* ¶ 46. As to the second incident, BGE was using Telogis logs from its fleet tracking system to establish that Alston had not been at the job site in question. *Id.* Alston maintained that the Telogis had malfunctioned, and he sent Gilden some screenshots of BGE's Garmin navigational system to counter BGE's Telogis records. *Id.* ¶ 46. Gilden did not respond to Alston's evidentiary submission. *Id.*

On April 9, 2019, Alston asked Gilden for an update.  *Id.* ¶ 47.  Gilden responded that he would see Gomez that night and would have an answer for Alston the next day.  *Id.*  Gilden acknowledged that the proceedings were lagging because Gomez and others were involved in the collective bargaining negotiations with BGE.  *Id.*

The next day, Gilden told Alston that his meeting with Gomez had been cancelled due to the collective bargaining negotiations.  *Id.* ¶ 49.  For several weeks, Alston texted Gilden repeatedly to request an update.  *Id.*  Finally, on May 14, 2019, Gilden told Alston that he would meet with Union Leadership that evening and would provide an update.  *Id.* ¶ 50.  At 7:18 PM, Gilden texted Alston a thumbs up, but did not respond when Alston inquired about its meaning.  *Id.*

On May 30, 2019, in response to a request from Alston for an update, Gilden stated that he had requested a meeting with HR, but had not yet received a date.  *Id.* ¶ 51.  However, on or about June 5, 2019, BGE and the Union finally reached a tentative collective bargaining agreement.  *Id.* ¶ 53.  They executed an ICP Transition Agreement specifying that any complaints or grievance submitted after 5 PM on June 14, 2019 would be governed by the collective bargaining agreement, but that all pending grievances would be resolved using ICP procedure.  *Id.* ¶ 54.  On or about June 25, 2019, the collective bargaining agreement was ratified by Union members.  *Id.* ¶ 55.  The next day, Alston spoke with Gilden regarding his grievance.  *Id.* ¶ 56.  During the conversation, "Gilden led Mr. Alston to believe that BGE had unilaterally decided to discontinue processing the grievances that were filed prior to contract ratification."  *Id.*  In a text following the call, Gilden stated:

> Kevin, your case was argued with HR and Union Leadership Kevin, your case was argued with HR and Union Leadership, I was not involved and they present at least 10 facts to show they had errors and HR Bindu Gross denied our interpretation of errors in your termination.  The Company because of the status of the yet to be

ratified contract was not allowing us to carry over any of the cases prior to ratification.  They consider all the ICP matters settled and closed.

*Id.*  Alston interpreted that discussion to mean that there had been individualized consideration of his case and that BGE had insisted it be closed.  *Id.*  On November 22, 2019, Alston learned that BGE and the Union had mutually agreed that the pending ICP grievances would be "deemed resolved."  *Id.* ¶ 57.  On December 26, 2019, Alston filed a complaint with the National Labor Relations Board ("NLRB"), alleging that the Union had failed to process his grievance for arbitrary reasons and had failed to bargain in good faith with BGE.  *Id.* ¶ 58.  However, his complaint was dismissed because it had been more than six months since the termination of his employment.  *Id.* ¶ 58.

## II.    LEGAL STANDARDS

Three motions are pending: Alston's motion for remand, ECF 27, and Defendants' motions to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), ECF 17, 18.

In his motion for remand, Alston challenges Defendants' asserted basis for removal, which is that "Plaintiff's Complaint arises, in whole or in part, under a law of the United States regulating commerce, specifically Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.* ("LMRA.")."  ECF 1 ¶ 11.  Courts "'strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court.'"  *Receivership of Mann Bracken, LLP v. Cline*, Civ. No. RWT-12-0292, 2012 WL 2921355, *2 (D. Md. 2011) (citing *Stephens v. Kaiser Found. Health Plan of the Mid–Atl. States, Inc.*, 807 F.Supp.2d 375, 378 (D. Md. 2011)).  As the Fourth Circuit has explained, "The burden of establishing federal jurisdiction is placed upon the party seeking removal.... Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.... If federal jurisdiction is doubtful, a remand is necessary."  *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994)

(citations omitted).  Nevertheless, because the decision to remand is largely unreviewable, district courts should be cautious about denying defendants access to a federal forum.  *See Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 988 F. Supp. 913, 914–15 (D. Md. 1997).

The other pending motions are Defendants' motions to dismiss, in which they argue that Alston has failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 17, 18.  A defendant is permitted to test the legal sufficiency of a complaint by way of a 12(b)(6) motion.  *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  Such a motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an

affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint,'" *Goodman*, 494 F.3d at 464 (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

## III.   ANALYSIS

### A.  Remand

Alston seeks to remand his Complaint to state court, alleging that it consists of only state law causes of action and no federal claims.  ECF 27.  The Complaint contains five counts, captioned as follows: Count I – Wrongful Discharge against BGE; Count II – Breach of Duty of Fair Representation Against Local 410; Count III – Breach of Contract Against BGE and Local 410; Count IV – False Representation Against Local 410 and Gilden; Count V – Negligent Representation Against Local 410 and Gilden.  ECF 3.

Although Alston presents Count II as a state law claim, the Supreme Court has explained that a union's duty of fair representation derives from federal statute.  *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (describing a union's "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.").  The *Vaca* Court noted that because the duty of fair representation is "grounded in federal statutes," federal law governs the cause of action and preempts state law.  *Vaca*, 386 U.S. at 177.  Other courts have held that complete preemption applies and provides a proper basis for removal from state Court, even where a plaintiff has

purported to assert only state law claims relating to fair representation.  *See, e.g.*, *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831-32 (1st Cir. 1997) (defining duty of fair representation preemption and holding "that a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating a duty of fair representation.").  The Fifth Circuit reached a similar conclusion, reasoning:

> Under *Vaca*, the NLRA duty of fair representation for the enforcement of which a federal (and state) court action is authorized, completely preempts state law because of the congressional intent that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity. We cannot conceive that Congress intended to complete displacive preemption of the *Avco* variety in the section 301 context, but not in the context of the duty of fair representation arising from a union's status as an exclusive collective bargaining agent under the NLRA.

*Richardson*, 864 F.2d at 1169-70.  Numerous district courts, including several in this district, have held that fair representation claims under state law are completely preempted.  *See Whorton v. Mack Trucks, Inc.*, Civ. No. CCB-19-413, 2019 WL 7049933, at * 3 (D. Md. Dec. 23, 2019) ("Here, the plaintiffs' claim is based on the union's position as their exclusive bargaining representative, and resolution of the claim would require interpretation of the CGA . . . Therefore, to the extent plaintiffs assert a state law [duty of fair representation] claim, it is preempted, and must instead arise under federal law."); *Ngamby v. Hamburg*, Civ. No. TDC-15-0931, 2015 WL 6674148, at *3 (D. Md. Oct. 29, 2015) (ruling that plaintiff's "breach of contract claim is most fairly read as alleging a violation of the duty of fair representation under the collective bargaining agreement.  Such a claim is completely preempted by federal labor law and thus was properly removed."); *Diggs v. Drivers, Chauffeurs & Helpers Local Union No. 639*, Civ. No. PJM-11-2404, 2012 WL 3774163, at *2 (D. Md. Aug. 29, 2012) ("[I]t is well-established that claims that require

10

interpretation of a collective bargaining agreement or implicate a union's duty of fair representation are preempted by federal law."); *Taylor v. Giant Food*, 438 F. Supp. 2d 576 (D. Md. 2006) (holding that "fair representation claims completely preempt state law, and therefore provide a proper basis for removal from state court, even if a plaintiff characterizes his or her claims as state-law claims.").

The Fourth Circuit has noted the importance of the federal interest in fair representation claims. *See Peterson v. Air Line Pilots Ass'n Int'l*, 759 F.2d 1161, 1169-70 (4th Cir. 1985), cert. denied, 474 U.S. 946 (1985) (stating "[t]he importance of the federal interest is such that the duty of fair representation cause of action is governed exclusively by federal law even when the claim is filed in state court."). In a separate case, it also reasoned, "[A] purportedly state law claim, the resolution of which depends substantially upon the analysis of a collective-bargaining agreement's terms, must either be treated as a claim under § 301 or be dismissed as preempted under federal labor law." *Davis v. Bell Atl.-W. Virginia, Inc.*, 110 F.3d 245, 247 (4th Cir. 1997). In response to this authority, Alston relies on *Barbour v. Int'l Union*, 594 F.3d 315 (4th Cir. 2010), which he suggests is binding precedent holding that complete preemption did not apply to a union member's claims for breach of fiduciary duty, because § 9(a) of the NLRA "simply does not reveal an intent to always foreclose state law claims for breach of fiduciary duty arising solely on the basis of union membership." *Id.* at 330. The *Barbour* panel distinguished *Richardson* and *BIW Deceived*, finding that, in light of the principle that any reasonable doubts must be resolved against complete preemption, the reasoning in those opinions contravened the requirement that "congressional intent that state law be entirely displaced must be clear in the text of the statute." 594 F.3d at 332.

By its own terms, however, *Barbour* based its holding on the narrow fact that the claim at issue was brought "solely on the basis of union membership," *Barbour*, 594 F.3d at 329-330, and

stated that, alternatively, cases where plaintiffs "specifically pled 'breach of the duty of fair representation' . . . clearly embraced § 9(a) of the NLRA," *id.* at 328 n.10 (citing *Taylor v. Giant Food, Inc.*, 438 F. Supp. 2d 576 (D. Md. 2006)). This case clearly falls into the latter category, given that Alston's duty of fair representation claim explicitly invokes Local 410's duties and obligations under the ICP and Transition Agreement. ECF 1 ¶ 75. What is more, the *Barbour* Court considered it "significant" to its conclusion that plaintiffs there pled "no claim against . . . their employer," nor did they assert "a breach of a collective bargaining agreement or of any duty owed by the [the union] as their bargaining agent." *Id.* at 329. Both of those key factors, absent from *Barbour*, are present here. Cumulatively, the foregoing considerations suggest that *Barbour*'s carveout of certain fair representation claims from § 9(a) preemption is inapplicable here, particularly given that any exploration of whether the Union did in fact represent Alston unfairly will require delving into the language of the ICP and Transition Agreement.[2] Defendants properly removed this case to federal court in light of the federal question presented in Count II of the Complaint.[3] Thus, ultimately, Alston's motion for remand must be denied.

---

[2] An additional flaw in Alston's heavy reliance on *Barbour* is that the cited opinion was subjected to rehearing *en banc,* and the *en banc* opinion that followed did not reach the issue of complete preemption, instead finding that removal had been sought untimely. *Barbour v. Intern. Union*, 640 F.3d 599 (4th Cir. 2011) (en banc). Thus, at best, the initial *Barbour* decision (and the *en banc* concurrence that would have upheld it), is merely persuasive. It lacks the sort of decisive value Alston seeks to accord it, particularly in the face of significant precedent that cuts against Alston's overarching argument in favor of remand. To that end, Maryland district courts have continued to find duty of fair representation claims preempted post-*Barbour. See, e.g.*, *Whorton*, 2019 WL 7049933, at *3 ("[C]laims by an employee against her union alleging breach of the duty of fair representation are preempted, especially where the resolution of that claim would require interpreting the CBA.") (citing *Taylor*, 438 F. Supp. 2d at 583); *Diggs v. Drivers, Chauffeurs & Helpers Local Union No. 639*, 2012 WL 3774163, at *2 (D. Md. Aug. 29, 2012) (same).

[3] Count III, the breach of contract claim against the Union premised on its alleged breach of the implied duty of good faith and fair dealing under the ICP, is also preempted on a related basis and would similarly provide an independent basis for removal. The breach of contract claim, by definition, seeks to enforce the contract between the employer and the labor Union, placing it

**B. Motions to Dismiss**

Having determined that remand is inappropriate, the Court next turns to Defendants' two unopposed motions to dismiss, ECF 17, 18. Before adjudicating those motions, further elucidation of the procedural history of this case is warranted. The motions to dismiss were filed on August 28, 2020. ECF 17, 18. On September 11, 2020, Alston filed, and this Court granted, a consent motion for an extension of time to file his oppositions, making the deadline September 18, 2020. ECF 19, 20. On that date, at 11:23 PM, Alston filed another request for an extension, this time indicating that his efforts to reach Defendants' counsel to ask for consent had been unsuccessful.[4] ECF 21. The Court again granted the requested three-day extension, making his deadline September 21, 2020. ECF 22. Nothing was filed on or before that date. On September 23, 2020, Defendants submitted a letter to the Court, noting that the motions had been unopposed, and asking the Court to address the motions accordingly. ECF 23. That same day, Alston filed yet another request for an extension of time to file, stating "the responses (along with a formal motion for an extension of time) will be submitted to the Court no later than Friday, September 25, 2020, and it would be an injustice for Your Honor to summarily dispose of meritorious claims when this slight additional delay will cause no prejudice to Defendants and will not materially impact the proceedings." ECF 24. This Court, once again, granted Alston's extension request. However, in

---

within the category of preempted claims. Even if the duties of good faith and fair dealing are implied and nonnegotiable, "deciding whether a deciding whether a party acted reasonably and in good faith in carrying out a right or obligation under the collective bargaining agreement requires a reference to the contract and an interpretation of its provisions, thereby invoking § 301 preemption." *Clark*, 937 F.2d at 937.

[4] An exhibit attached to another filing demonstrates that the attempt to reach counsel regarding the proposed extension occurred by email on a Friday evening at 10:37 PM. ECF 23-1.

light of the opposing position taken by Defendants, the Court specifically cautioned Alston that "NO FURTHER EXTENSIONS WILL BE GRANTED." ECF 25.

Despite the Court's express and emphatic warning, September 25, 2020 came and went without a filing. On September 28, 2020, Defendants again wrote to the Court, requesting that their motions to dismiss be granted as unopposed. ECF 26. The next day, on September 29, 2020, Alston filed the above-discussed Motion to Remand, ECF 27. In that motion, Alston incorporated exhibits and argument directly opposing the motions to dismiss the claims. *Id.* This Court declines to countenance Alston's end-run around its unequivocal deadline by considering the arguments and exhibits he submitted under the guise of the remand motion.

As United States District Judge Ellen L. Hollander reasoned in *White v. Wal Mart Stores, Inc.*, Civil Action No. ELH–13–00031, 2014 WL 1369609, at *2 (D. Md. Apr. 4, 2014):

> Because plaintiff failed to file any opposition to the Motion, this Court has the discretion to dismiss the case without reaching the merits. When a plaintiff fails to oppose a motion to dismiss, a district court is "entitled, as authorized, to rule on the ... motion and dismiss [the] suit on the uncontroverted bases asserted" in the motion. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *Mentch v. Eastern Sav. Bank, FSB*, 949 F.Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim).

Thus, the Court would be entitled to dismiss Alston's case without reaching the merits of the motions, given Alston's failure to file an opposition despite seeking and obtaining multiple extensions.

In addition, however, the Court finds the motions to dismiss to be meritorious. As discussed above, Alston's Count II and Count III claims are preempted by federal labor law, and thus subject to a six-month statute of limitations. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 154-55 (1983) (holding that a claim against an employer for breach of

the CBA, and against the union for breach of its duty of fair representation, is subject to the six month statute of limitations in 10(b) of the National Labor Relations Act); *see also Ramey v. Int'l Bhd. of Elec. Workers*, 580 F. Supp. 2d 44, 47 (D.D.C. 2008) ("A plaintiff has only six months after the cause of action arose to file a claim brought under 301 of the LMRA against a union for breaching its duty of fair representation.").  Alston's cause of action as to those federally preempted claims accrued on June 26, 2019, when he learned that BGE viewed his grievance as "settled and closed."  *See Lay v. Local Union 689 of the Amalgamated Transit Union, AFL-CIO*, Civ. No. PJM 18-2183, 2019 WL 2744629 (D. Md. July 1, 2019) ("The cause of action 'accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage.'") (quoting *Dement v. Richmond, F. & P.R. Co.*, 845 F.2d 451, 460 (4th Cir. 1988)).  Six months following June 26, 2019 is December 26, 2019.  This action was filed on May 27, 2020.  ECF 1-1.  Thus, Alston's preempted claims in Counts II and III must be dismissed with prejudice because they are barred by limitations, due to being filed more than six months after Alston knew or should have known that the Union's representation had been deficient.

Similarly, the wrongful discharge claim Alston asserts in Count I of the Complaint must be dismissed here because it is subject to the exclusive jurisdiction of the National Labor Relations Board ("NLRB").  The controlling Supreme Court case is *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), which held that the NLRB has exclusive jurisdiction to determine whether conduct constitutes an unfair labor practice under the NLRA.  *See id.* at 242 ("Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience.").  The *Garmon* preemption doctrine, then, explains that state and federal courts are preempted from considering conduct that is either "arguably protected" or "arguably

prohibited" by the NLRA, because the courts must defer those issues to the NLRB. *Id.* at 245. The Fourth Circuit has noted that *Garmon* preemption applies "if the conduct relied on to prove a crucial element in the state action is conduct that is arguably covered by the NLRA." *Richardson v. Kruchko & Fries*, 966 F.2d 153, 156-57 (4th Cir. 1992).

Here, Count I of Alston's Complaint plainly refers to his exercise of "his statutorily protected rights under the NLRA when he requested Union representation at the fact-finding meeting." ECF 3 ¶ 62. The NLRA expressly addresses the type of retaliatory acts Alston alleges BGE took. Section 8(a)(1) of the NLRA prohibits employers from actions that "interfere with, restrain, or coerce employees in the exercise of rights guaranteed" by Section 7, which includes the right to request union representation. Similarly, Section 8(a)(3) prohibits discrimination in regard to "hire or tenure of employment . . . to encourage or discourage membership in any labor organization." 29 U.S.C. §§ 158(a)(1), (3). Thus, it falls squarely within the exclusive jurisdiction of the NLRB and dismissal with prejudice is appropriate. *See Richardson*, 966 F.2d at 158.

### C.  The Remaining State Law Claims

With respect to Alston's two true state law claims in Counts IV and V, this Court declines to exercise supplemental jurisdiction.[5] *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction where the claims over which it has original jurisdiction have been dismissed); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable

---

[5] The captioning of those claims as "false representation" and "negligent representation" misleadingly suggests that they too might implicate the duty of fair representation, when instead it appears from the context that Alston intended to assert tort claims for "fraudulent misrepresentation" and "negligent misrepresentation" under Maryland law.

law."). Therefore, in light of the unopposed motions to dismiss, Alston's state law false representation and negligent representation claims will be dismissed without prejudice, leaving him free to pursue those claims in state court.[6]

## IV.   CONCLUSION

For the reasons set forth above, Alston's Motion to Remand, ECF 27, will be DENIED, and Defendants' Motions to Dismiss, ECF 17 and 18, will be GRANTED. Counts Four, and Five of the Complaint will be dismissed without prejudice, and Counts One, Two, and Three will be dismissed with prejudice. A separate implementing Order follows.


Dated: November 12, 2020                                    _____/s/_____
                                                            Stephanie A. Gallagher
                                                            United States District Judge

---

[6] Because this Court is dismissing the Complaint in its entirety, it need not address the defendant-specific arguments raised in the Motions. This Court notes, however, the lack of any factual allegations pertaining to Exelon or EBSC. In the caption to Count I, Alston does not even purport to claim violations by those Defendants.